**TEXTILE WORKERS UNION OF AMERICA, AFL-CIO, CLC, Appellant,**

v.

**TEXTILE PAPER PRODUCTS, INC.,**
**Appellee.**

**No. 25155.**

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1968.

Benjamin L. Erdreich, Birmingham, Ala., Daniel Jordan, New York City, Cooper, Mitch & Crawford, Birmingham, Ala., for appellant.

V. Lee McMahon, St. Louis, Mo., Allan R. Cameron, Mobile, Ala., Alan I. Berger, Gerald Tockman, McMahon & Berger, St. Louis, Mo., Sullivan & Cameron, Mobile, Ala., for appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District Judge.

SINGLETON, District Judge:

Appellant Textile Workers of America appeals from a judgment of the district court vacating an arbitration award favorable to the union. We reverse.

On June 19, 1964, the union and Textile Products, Inc. signed a collective bargaining agreement establishing the rights and obligations of both parties for the ensuing five years. The wage

398

rate provision of the agreement, and the provision around which the instant controversy centers, set forth employee wage rates in the following manner.

| | Effective 5/18/64 | Effective 5/18/65 | Effective 5/18/66 | Effective 5/18/67 | Effective 5/18/68 |
|---|---|---|---|---|---|
| Operator No. 1 Machine | 2.10 | 2.15 | 2.20 | 2.27 | 2.34 |
| Operator No. 2 Machine | 2.05 | 2.10 | 2.15 | 17.21 | 17.77 |
| * * * | *** | *** | *** | 2.22 | 2.29 |
| Truck Drivers | 15.85 | 16.25 | 16.65 | *** | *** |

The contract also provided that unless otherwise stated the above rates were to be applied on an hourly basis.

Prior to the signing of the contract, the truck drivers employed by the company had been compensated on a so-called "day rate" basis. Rather than being paid by the hour, they had been paid a full day's pay for each trip of less than 250 miles which they made. This method of payment continued for a period of eleven months after the signing of the agreement. On May 19, 1965, the company announced to its drivers that from that day forward the drivers would be paid by the hour for each trip of 75 miles or less and that for all trips over that distance they would be paid a full day's pay. The drivers immediately filed a grievance, complaining that the company had unilaterally altered the agreed upon method of payment in violation of the collective bargaining agreement. Over the company's protest, the grievance was submitted to arbitration in accordance with the collective bargaining agreement, and on February 25, 1966, the arbitrator sustained the grievance and entered an award in favor of the union. The company then filed the instant action.

Before the district court, the company assailed the award on the grounds that the award was arbitrary and capricious and that in rendering the award the arbitrator had exceeded his authority under the collective bargaining agreement. Both parties moved for summary judgment, the company asking that the award be vacated, and the union, by counterclaim, asking that the award be enforced. On June 30, 1967, the district court entered an order vacating the award "as being in excess of the contractual authority conferred by the collective bargaining agreement."

Under the terms of the agreement, the scope of the arbitrator's authority was limited to resolving disputes concerning the application and interpretation of the agreement. Appellee's arguments to the contrary notwithstanding, we think the arbitrator here did no more than interpret and apply the wage rate provisions of the truck drivers as he was empowered to do.

Neither party, either before the arbitrator or now has ever suggested that the rates for truck drivers were to be applied on an hourly basis. Such an interpretation of the contract would clearly lead to an unintended result. But because the agreement did provide that unless otherwise stated all wage rates were to be applied on an hourly basis, an ambiguity existed concerning the manner in which the truck driver rates were to be applied. The arbitrator resolved the ambiguity in the union's favor on the basis of the following reasoning:

"The impartial arbitrator believes that the strongest evidence of the true meaning of [the wage rate provisions] is to be found in the practical construction given it during the period immediately after the contract was signed and up until May 19, 1965.

*   *   *   *   *   *

"The Board of Arbitration should adopt the practical construction of the parties and give the wage provision of the agreement the uniform meaning that it was given for eleven months after the contract went into effect. It follows that the award should provide that the Company violated the contract by changing the basis for the payment of truck drivers in May, of 1965. The award should further provide for making the aggrieved employees whole for any loss of pay due to the changed basis of compensation for truck drivers."

██ Appellee contends that the arbitrator's opinion shows clearly that in rendering the award he violated Articles 1.04 and 6.01 of the collective bargaining agreement. Those articles, however, simply provide that no departure in practice by the parties should be held to affect a modification or alteration of the terms of the agreement and that the arbitrator should not have the power "to modify or change any wage rates." We fail to see how the arbitrator's award violates either of these articles. The arbitrator merely resolved the ambiguity concerning how the wage rates were intended to be applied. He did not alter or modify the agreement on the basis of the parties past practices nor did he modify or change any of the wage rates. The award clearly indicates that it finds its source in the collective bargaining agreement. Having determined this, judicial inquiry should end, for when an award draws its essence from the collective bargaining agreement, "it is not open to a court to assay the legal correctness of the reasoning pursued." Safeway Stores v. American Bakery & Confectionary Workers International, 390 F.2d 79, 83 (5th Cir. 1968). See also United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); Dallas Typographical Union, No. 173 v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967).

Appellee relies heavily upon Torrington Co. v. Metal Products Workers Union, 362 F.2d 677 (2d Cir. 1966), but it is clearly distinguishable.[1] There, the union and the employer signed a collective bargaining agreement which provided that it was to constitute the exclusive source of the rights and obligations of the parties. Prior to the signing of the agreement, the employees had been given an hour's time off with pay on election days so that they could exercise their right to vote. The collective bargaining agreement made no reference to this practice, and the employer refused to continue it after the agreement had been signed. The union filed a grievance which was submitted to arbitration, and the arbitrator held that on the basis of the practice of the parties *prior* to the signing of the agreement, it was implied as a part of the written agreement that the employees would be given time off with pay on election days. On review, the court set the award aside as being in excess of the arbitrator's authority, since the arbitrator had added to the terms of the agreement on the basis of the parties' prior practice.

Unlike *Torrington*, the matter on which the instant dispute was based is dealt with in the collective bargaining agreement. In *Torrington*, the dispute was based on subject matter entirely outside the scope of the agreement. Moreover, in *Torrington*, the arbitrator relied upon the practice of the parties prior

---

1. Moreover, *Torrington* is limited in its application. In Dallas Typographical Union v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967), the court stated in reference to *Torrington:*

"That decision seems to carry its own caveat. Couched as it is in terms of whether the bargaining agreement *authorizes* the arbitrator to expand its express terms on the basis of the parties prior practice' * * *, 362 F.2d 680, we think it has to be very carefully confined lest, under the guise of the arbitrator not having 'authority' to arrive at his ill-founded conclusions of law or fact, or both, the reviewing-enforcing court takes over the arbitrator's function." Id. at 583.

to the signing of the agreement, whereas the arbitrator here primarily relied upon the way in which the wage rate provisions were administered by the parties contemporaneously with and for eleven months following the signing of the agreement.

The instant case is closer on its facts to Safeway Stores v. American Bakery & Confectionary Workers International, supra, which we feel is controlling. There, the employees had been paid each Thursday, with the payroll period ending on Wednesday. The company sought to alter its payroll closing date by changing the date of payment to Tuesday for work done through the previous Friday. The union filed a grievance, contending that the company had violated the collective bargaining agreement. The collective bargaining agreement dealt with wages, rates of pay, and with the minimum day and week for the employees, but contained no specific reference to the date on which employees were to be paid. The arbitrator sustained the grievance, and the company appealed to the courts. In upholding the arbitrator's award, the court stated:

> "[Courts should resist] the temptation to 'reason out' a la judges the arbiter's award to see if it passes muster. So it is here. But even under these self-imposed wraps this award shows on its face two things. First, the arbiter was drawing on the collective bargaining agreement as the source both of the dispute and its solution. Second, the award put forward a passably plausible—even if perhaps erroneous—analysis of the interplay of the contractual provisions, *especially in light of the Employer's long practice of wage payment to the very eve of payment day with no withholding of earned wages.* * * * The arbiter was chosen to be the Judge. That Judge has spoken. There it ends." Id. 390 F.2d at 83–84. (Emphasis Added) See also Western Iowa Pork Co. v. National Brotherhood Packing House & Dairy Workers, 366 F.2d 275, 278 (8th Cir. 1966).

The judgment of the district court is reversed and the case remanded to the district court with instructions that that court set aside the summary judgment previously rendered for appellee, Textile Paper Products, Inc., and enter judgment for appellant, Textile Workers Union of America, AFL–CIO, CLC, in accordance with its motion for summary judgment.