**Jerome R. SISKEY, Plaintiff,**

v.

**GENERAL TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, LOCAL NO. 261, an unincorporated labor organization, et al., Defendants.**

**Civ. A. No. 74–788.**

United States District Court,
W. D. Pennsylvania.

Aug. 25, 1976.

---

Richard D. Gilardi, Pittsburgh, Pa., for plaintiff.

Joseph J. Pass, Jr., Pittsburgh, Pa., for General Teamsters.

Max L. Lieberman, Philadelphia, Pa., George Shorall, Pittsburgh, Pa., for Eazor Express, Inc.

## OPINION

MARSH, District Judge.

The plaintiff, Jerome R. Siskey, has filed this action against his employer, Eazor Express, Inc. (Eazor), and his labor union pursuant to Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. At issue are motions for summary judgment filed by Eazor and the union defendants, General Teamsters, Chauffeurs, Warehousemen & Helpers, Local 261 (Local 261) and Teamsters Joint Council No. 40. In our opinion the motions should be granted.

Plaintiff asserts that Eazor breached its contractual duty with respect to the plaintiff's seniority rights under the applicable collective bargaining agreement.[1] Plaintiff filed a grievance which was processed in accordance with the procedures provided in the collective bargaining agreement, and the grievance was ultimately rejected by the arbitration committee whose decisions are to be final and binding. Generally, the scope of judicial review of an arbitration award is severely limited and does not reach the merits of the award. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969). Furthermore, suits challenging such arbitration decisions are generally subject to a three-month statute of limitations which would bar the instant action filed eleven months after the arbitration decision. *International Union v. Hoosier Cardinal Corporation*, 383 U.S. 696, 704–705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *United Mine Workers v. Jones & Laughlin Steel Corp.*, 378 F.Supp. 1206, 1211–1212 (W.D. Pa.1974); *International Brotherhood of Teamsters, Local Union No. 249 v. Motor Freight Express, Inc.*, 356 F.Supp. 724, 726 (W.D.Pa.1973). However, in this action the plaintiff's challenge to the arbitration decision is accompanied by a claim that the defendant union breached its duty of fair representation. Thus, we must examine the situation to determine whether the alleged breach of duty by the union undermined the integrity of the arbitral process so seriously as to bar the finality provisions of the contract. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (decided March 3, 1976).

The facts set forth in the complaint, the plaintiff's deposition, and the affidavits accompanying the pleadings are as follows:

The plaintiff, a 35-year-old man, is completely blind in his right eye. (Siskey Deposition p. 15).[2] He was hired by defendant Eazor as a loading dock worker in Pittsburgh in August, 1966. (Dep. p. 5). In July 1971, Eazor asked for volunteers to transfer from Pittsburgh to Eazor's facility in West Middlesex about 70 miles from Pittsburgh. Plaintiff signed up and went to work at West Middlesex as a dock worker. He was never classified as a truck driver and he did not work as a truck driver at West Middlesex. (Dep. pp. 7, 8). In September 1971, plaintiff was appointed by the shop steward to be a committeeman in Local Union 261. (Dep. p. 9).

In mid-1973, Eazor decided to transfer certain operations from West Middlesex to the Pittsburgh terminal. The planned change of operations would reduce by 25 the number of employees at the West Middlesex terminal. The 22 positions remaining at West Middlesex were to be filled by "qualified combination men"—i. e., men who were qualified to drive a truck as well as work on the dock.[3] (Affidavit of Andrew Krantz, Terminal Manager at Eazor's West Middlesex facility). Plaintiff did not qualify as a truck driver outside the Sharon Commercial Zone because of his blind eye. (Dep. p. 15).

At the time of the aforementioned transfer, plaintiff was approximately number 14 on the West Middlesex seniority list. (Affidavit of Krantz, Ex. B).

On July 25, 1973, Eazor sent the plaintiff a letter explaining that he and the other 24 men whose jobs were affected by the change of operations were being offered work at the Eazor Terminal in Pittsburgh with full company seniority. (Dep. Ex. 1). Plaintiff rejected the work offer telling the company he did not want to move back to Pittsburgh. (Dep. p. 11).

---

1. The applicable collective bargaining agreement consists of two separate agreements, namely the National Master Freight Agreement and the Teamsters Joint Council No. 40 Freight Division Local Cartage Supplemental Agreement.

2. Siskey's deposition is hereinafter indicated by Dep.

3. The proposed change of operations was approved by the Western Pennsylvania Teamsters and Employers Joint Area Committee on July 11, 1973.

On August 17, 1973, Eazor sent the plaintiff a letter advising him that due to the change of operations and his objection to relocation in Pittsburgh, he was being laid off effective August 20, 1973. (Dep. Ex. 2).

On August 21, plaintiff filed a grievance with the union alleging a violation of the seniority provision of the collective bargaining agreement and stating: "I was laid off by letter dated August 17, 1973. Company told me I cannot qualify for work in West Middlesex and I feel I can." He requested that he be called for work at West Middlesex and be paid for all lost wages. (Dep.Ex. 3).

Mr. Jack Frazier, who was then the business agent for Local 261 and who had prepared the grievance form for the plaintiff (Dep. pp. 44–45), discussed the grievance with company officials, but the dispute was not resolved. (Affidavit of Frazier).

Pursuant to Article 46, § 1(c)[4] of the collective bargaining agreement, the grievance was submitted to the Western Pennsylvania Teamsters and Employers Joint Area Committee, the arbitrators. This arbitration committee considered plaintiff's grievance on September 12, 1973, and issued the following findings:

"Union Position: The Grievant, Jerome R. Siskey, claimed he was laid off 8/17/73 because he allegedly cannot qualify for work in West Middlesex whereas the Grievant feels he is qualified and should be called for work. Grievant is claiming pay for all lost wages.

"Employer Position: The company stated the Grievant cannot qualify under [United States Department of Transportation regulations] because of eye impairment to work outside commercial zone. Change of operations stated that employees who stayed at West Middlesex must be a qualified driver. Change was approved as submitted.

"Decision: The Committee ruled the employee is to be called for work available for which he qualifies." (Dep.Ex. 6).

Thereafter, in accordance with the "Decision", it appears from the plaintiff's deposition and the affidavits that plaintiff was "called for work available for which he qualifies." Plaintiff was frequently recalled from layoff when dock work was available. (Affidavit of Krantz); (Dep. pp. 21–31 and Ex. 5).

In 1973 Eazor did not have established runs for each driver employed at West Middlesex. Drivers were permitted to choose an established starting time on a seniority basis and the trucks were dispatched to destinations generally beyond the Sharon Commercial Zone. Accordingly, each driver had to be qualified under the applicable Department of Transportation Regulations. It is undisputed that these federal regulations disqualify a driver blind in one eye such as plaintiff. 49 C.F.R. § 391.41(b)(10). Thus at the time plaintiff could not have been recalled for general commercial truck driving, and there were no positions available at West Middlesex for drivers, such as plaintiff, who were qualified only to operate a vehicle within a commercial zone. (Affidavit of Krantz).

It appears that subsequently Eazor established one "exempted" truck driving position within the Sharon Commercial Zone as defined by 49 C.F.R. § 1048.101, which includes West Middlesex. The exemption applies to drivers of vehicles which are operated wholly within a municipality or a municipality's commercial zone and which are not hauling hazardous material. 49 C.F.R. §§ 390.16, 390.33. Although plaintiff was qualified for this position despite his blind eye, that "exempted" position was given to Roy Baker, an employee who had more seniority than plaintiff.

---

4. Article 46 of the contract is entitled "Grievance Machinery and Union Liability." Section 1(c) provides:

"In the event the matter cannot be adjusted by the method set forth above it shall be referred to the Western Pennsylvania Teamsters and Employers Joint Area Committee to hear and adjust the matter. Where the Joint Area Committee, by a majority vote, settles a dispute, no appeal may be taken. Such a decision will be final and binding on both parties with no further appeal."

On August 31, 1975, Baker resigned from Eazor and his run in the Sharon Commercial Zone became available to the plaintiff, the next senior employee. (Affidavit of Krantz, Exs. E and F). In September, 1975, the plaintiff was recalled from layoff and assigned employment as a "combination man" on the "exempt" run entirely within the Sharon Commercial Zone.

The instant action was filed in August, 1974, eleven months after the arbitration decision of September 12, 1973.

Plaintiff alleges that the defendants, Local 261 and Teamsters Joint Council No. 40, breached their duty of fair representation by (1) processing the plaintiff's grievance in an arbitrary and perfunctory manner; (2) failing to extend to the plaintiff minimal due process safeguards; and (3) failing to render a definitive and comprehensible finding as to the plaintiff's status. In support of these allegations, plaintiff asserts that he was never informed that his grievance would be presented to the arbitration committee and that he was never invited to attend the committee's meeting on September 12, 1973. He also asserts that he did not learn of the arbitration decision until October, 1973. (Affidavit of Siskey; see also Dep. p. 80).

The plaintiff's assertions are contradicted by the former business agent and present officer of Local 261 who claims that he advised plaintiff that the grievance would be heard by the Joint Area Committee on September 12, 1973, and that if plaintiff wanted to be present, he should contact his shop steward to make arrangements. (Affidavit of Frazier). Frazier sent a letter to the steward informing him of the scheduled arbitration hearing and telling the steward to advise the plaintiff that he could attend if he desired. (Affidavit of Frazier, Ex. 1). Frazier further states that he personally advised the plaintiff of the arbitration decision within 14 days after the hearing. (Affidavit of Frazier).

■ However, although we accept the plaintiff's version of the facts, as required on motions for summary judgment, the alleged deficiencies by the defendant unions cannot be said to constitute a breach of the duty of fair representation. The Supreme Court has held that a "breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The *Vaca* standard was applied to deny an unfair representation claim in *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3rd Cir. 1970):

> "The test is whether the union breached its duty of fair representation by dealing with [plaintiff's] claim in bad faith or in an arbitrary manner. The evidence falls short of meeting this test. Nor is the union's failure to inform plaintiff of its decision not to go forward with his case enough to establish unfair representation, especially since there is no showing that this prejudiced him in any way, . . ."

■ The Court of Appeals held that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation. It is essential to plaintiff's claim that there be proof of arbitrary or bad faith conduct on the part of the union in processing the grievance. *Bazarte*, 429 F.2d at 872. Viewing the facts in the light most favorable to the plaintiff, we find that he has not met this standard of proof. Specifically, failure to inform the grievant of the meeting at which his grievance is to be discussed is not sufficient to support a claim of unfair representation. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975). In the case *sub judice* there was no personal animus and hostility between plaintiff and the unions as existed in *Whitten*.

There is no evidence of discrimination, bad faith or arbitrariness by the union defendants. Plaintiff testified that he has not been discriminated against because of race or religion. (Dep. p. 32). Plaintiff has stated that he never requested to be present at the arbitration hearing (Dep. p. 55) and

that he knew of only one other grievant who had attended an arbitration hearing. (Dep. p. 56). Finally, there has been no showing of any prejudice to the plaintiff as a result of the conduct of the union defendants. Plaintiff testified at his deposition that the "union position" set forth in the findings by the arbitration committee accurately represents what the plaintiff wanted to tell the committee. (Dep. pp. 88–89).

■ At the argument on the motions for summary judgment, counsel for the plaintiff raised the additional contention that the union violated its duty under *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (decided March 3, 1976), by failing to investigate plaintiff's grievance and by failing to present to the arbitration committee a medical report which allegedly could have been discovered with a minimum of investigation. The medical report in question (Dep.Ex. 4) relates to a physical examination of the plaintiff conducted on September 6, 1973, by Dr. J. G. Wassil. The report states that plaintiff Siskey lost his right eye at the age of 24, that the eye does not react to light, and that the plaintiff has no vision in the eye. The report, however, also contains a certification by the doctor that Siskey is qualified as a driver under the Motor Carrier Safety Regulations (49 C.F.R. §§ 391.41, 391.49).

The instructions to examining physicians set forth in § 391.43(c) state unequivocally: "Monocular drivers are not qualified to operate commercial motor vehicles under existing Federal Motor Carrier Safety Regulations."

Section 391.41(b)(10) provides that in order to qualify as a driver, a person must have distant visual acuity of at least 20/40 or better with corrective lenses, and field vision of at least 70° in the horizontal meridian *in each eye.*

The inaccuracy on the face of the doctor's report makes it quite different from the uninvestigated evidence in *Hines* which tended to show that the dishonesty charges against the discharged employees were false. Furthermore, there can be no showing of prejudice to plaintiff from the failure to present this report to the arbitration committee since the committee's findings indicate that the plaintiff's blind eye and the federal regulations were taken into consideration. (Dep.Ex. 6). With or without the medical report, the arbitrators' decision would necessarily be the same. Even if plaintiff had attended the hearing, the arbitrators' decision would necessarily have been the same.

■ Plaintiff's only additional contention of unfair representation is that the arbitration decision was unfavorable.[5] (Dep. p. 89). This argument is without merit. A labor union's duty is to serve the interests of all members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). The fact that the defendant unions, after pursuing the plaintiff's claim through the grievance procedure and the arbitration stage, received an unfavorable result from the arbitration committee cannot be construed to mean that the unions breached their duty to plaintiff.

As to plaintiff's claims against Local 261 and Teamsters Joint Council No. 40, we conclude that taking the view of the evidence most favorable to the plaintiff, there

---

5. It appears from plaintiff's complaint and from his testimony that he mistakenly believes that the arbitration decision was made by defendant Teamsters Joint Council No. 40 (Dep. pp. 82–84), which is actually an association of local unions organized for the purpose of negotiating collective bargaining agreements. Teamsters Joint Council No. 40 does not have individual employee members and does not collect dues from individual employees. (Affida-vit of Frazier). The arbitration hearing was conducted by the Western Pennsylvania Teamsters and Employers Joint Area Committee before a panel consisting of two employer representatives (neither associated with Eazor) and two union representatives (neither associated with Local 261). (Affidavit of James H. Hutchinson, Jr., co-secretary of the Joint Area Committee).

exists no genuine issue as to any material fact and the defendant unions are entitled to summary judgment as a matter of law. Rule 56, Fed.R.Civ.P.

Having concluded that the integrity of the arbitration process was not undermined by any breach of the union's duty to the plaintiff, we now address the plaintiff's claim against the employer, Eazor.

■ Plaintiff claims that Eazor breached its contractual duty to the plaintiff by failing to recognize his seniority status.[6] Under the collective bargaining agreement, the exclusive remedy for such an alleged breach is through the grievance procedure (Article 8, Section 1; Article 46, Section 1). As detailed above, plaintiff's claim was processed through the appropriate grievance machinery and resulted in a final and binding decision by the arbitrators. (See footnote 4, *supra*). *General Drivers Union v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). That decision did not grant plaintiff's claim for wages lost as a result of the layoff. The ruling draws its essence from the seniority provisions of the collective bargaining agreement (Article 5 and Article 43) and cannot be said to be too vague for enforcement. A contrary decision would have been inconsistent with the federal regulations prohibiting truck driver qualification to a person blind in one eye.[7] Even if there were no question of untimeliness due to the statute of limitations,[8] the plaintiff has not come forward with any evidence that would justify disturbing the arbitration decision under the standards applied in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. 1358 and *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1128. The motion of the defendant Eazor for summary judgment will be granted.

An appropriate order will be entered.

---

**6.** Plaintiff's complaint also alleges that Eazor did not accord him due process during the grievance procedure and that Eazor acted in concert with the defendant labor organization against the plaintiff. There is nothing in plaintiff's affidavit to support these additional allegations, and, in fact, the plaintiff's own testimony at the deposition contradicts these claims:

"Q: Did anyone from the company ever get together with anyone from the union to deprive you of your rights under the grievance procedure?

A: No, not that I know." (Dep. p. 42).

**7.** It is to be recalled that as soon as Roy Baker, having more seniority, resigned (Krantz Affidavit, Ex. E) Eazor recalled plaintiff to replace Baker as an exempt intracity driver (49 C.F.R. § 390.16) on September 2, 1975.

**8.** The plaintiff's action was filed more than eleven months after the decision by the joint area committee. Two Judges of this court have applied the three-month limit of the Pennsylvania General Arbitration Act and the Federal Arbitration Act to bar suits filed eleven months and thirteen months after the date of the arbitration decision. *United Mine Workers v. Jones & Laughlin Steel Corp.*, 378 F.Supp. at 1211–1212; *International Brotherhood of Teamsters, Local Union No. 249 v. Motor Freight Express, Inc.*, 356 F.Supp. at 726.