COLE (a Division of Litton Business Systems, Inc.), Plaintiff,

v.

UNITED STEELWORKERS OF AMERI-CA, LOCAL NO. 4407, Defendant.

UNITED STEELWORKERS OF AMERICA, AFL–CIO, Plaintiff,

v.

COLE (a Division of Litton Business Systems, Inc.), Defendant.

Civ. Nos. 77–548 and 77–580.

United States District Court, M. D. Pennsylvania.

Dec. 9, 1977.

Norman I. White, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff in Civ. No. 77–548 and defendant in Civ. No. 77–580.

Mary-Win O'Brien, Pittsburgh, Pa., for defendant in Civ. No. 77–548.

Joseph Lurie, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., A. E. Lawson, Asst. Gen. Counsel, U.S. Steel-

workers of America, Pittsburgh, Pa., for defendant in Civ. No. 77–548 and plaintiff in Civ. No. 77–580.

C. Grainger Bowman, Harrisburg, Pa., for defendant in Civ. No. 77–580.

## OPINION

MUIR, District Judge.

Cole, a division of Litton Business Systems, Inc. (Cole) on June 22, 1977 filed the action numbered Civil 77–548 against United Steelworkers of America, Local No. 4407 requesting this Court to overturn a portion of a decision of an arbitrator calculating an incentive standard for automatic presses as being outside the scope of the arbitrator's authority. United Steelworkers of America, AFL–CIO, (United Steelworkers) on July 5, 1977 filed the action numbered Civil 77–580 against Cole asking the Court to enforce that portion of the arbitrator's decision. In a somewhat futile attempt to prod the parties into action, the Court on June 24, 1977 set Civil No. 77–548 for trial on the December, 1977 trial list and on July 6, 1977 set Civil No. 77–580 for trial on the same trial list, with final pre-trials to be held December 1, 1977. On November 17, 1977 the Court granted Cole's motion to consolidate the two actions because they involved common questions of law and fact.

Counsel exhibited unusual lethargy in failing to move for summary judgment. On November 3, 1977, the United Steelworkers filed a motion for summary judgment accompanied by a brief and an affidavit of Ralph C. Dasher, a union rate steward. On November 18, 1977, Cole filed a cross motion for summary judgment accompanied by an affidavit of Thomas L. O'Malley, the director of the Industrial Relations for Cole, and a brief in response to the United Steelworkers' brief and in support of Cole's cross-motion. The motions became ripe for decision on November 26, 1977 and November 27, 1977 respectively, just a few days before the scheduled final pre-trial conference of December 1, 1977 and the start of the December list. The sloth of counsel in waiting until November 3, 1977 and November 18, 1977 to file their motions is inexcusable.

Because there is no factual dispute between the parties, this issue is appropriate for resolution by means of summary judgment. F.R.Civ.P. 56. The facts leading to the filing of the lawsuits are as follows:

Cole, a division of Litton Business Systems, Inc. and United Steelworkers AFL–CIO have entered into a collective bargaining agreement which covers the employees at Cole's plant in York County, Pennsylvania. Article XIV of that Agreement relates to the setting of incentive standards for job operations within the plant. In early October, 1975, pursuant to the Standard Hour Incentive Plan of Article XIV, Cole set incentive standards for several of its automatic presses. The union rate steward, Ralph C. Dasher, filed an operational request change on October 10, 1975 stating his dissatisfaction with the amount of incentive bonus which Cole had provided for the operation of the presses. On November 14, 1975, following Cole's response that it was holding the standards open pending further investigation, Dasher and other press operators filed a grievance requesting that the standards be adjusted upward to yield a fair amount of bonus. The parties were unable to resolve their grievance and it was submitted to final and binding arbitration pursuant to Article V of the Collective Bargaining Agreement. The arbitrator, G. Allen Dash, Jr. issued an opinion on March 28, 1977 sustaining the grievance filed by the Union and awarding them their requested bonus of 37.5%. Cole had contended that the amount of bonus should be limited to 30.5%. However, the arbitrator used a method of calculating the 37.5% bonus which differed from the method which was previously used by the parties in determining such incentive bonuses. Cole contends that the Collective Bargaining Agreement did not authorize the arbitrator to employ a method of calculation other than that which had been used by the company in setting incentive standards and that that portion of his award in favor of the Union should be vacated by this Court. The United Steelworkers request the Court to uphold that portion of the arbitrator's decision.

Article XIV, Section 1 of the Collective Bargaining Agreement between Cole and the United Steelworkers of America effective July 1, 1975 provides for the setting of incentive standards applicable to each job within the plant. Both parties agreed that the Standard Hour Incentive Plan is the one most adaptable to the Plant's operation. Article XIV defines certain terms which are used in the article and states procedures for the company's setting of incentive standards and the Union's appeals therefrom. However, no specific method of calculation is contained in Article XIV.

Arbitrator Dash, in his decision dated March 28, 1977, found for the Union and proceeded to compute the proper incentive for automatic presses Nos. 7036 and 7082 in the following manner: Arbitrator Dash noted that under the agreement, the production standard was defined as the number of pieces that an average operator would be able to produce in one hour of work. An employee's earnings are calculated on the basis of standard hours computed by dividing the actual production of the employee by the production standard set for the particular job. For example, if a machine operated by an average employee customarily produced 1,000 parts in an hour and a particular employee was able to produce 1,500 parts in an hour, he would have earned 1½ standard hours for the actual hour of work. Cole, in setting the production standard for the automatic presses, apparently first calculated a "base minute" which is that fraction of a minute required to produce one part by a given machine. It then followed ¶ (c)(2) of § 1 of Article XIV of the Collective Bargaining Agreement in multiplying that base minute by a levelling factor, which would apparently take into account the relevant degree of difficulty involved in operating the press with other operations in the plant and the relative skills of the press operators and factored in a 16–26% overall allowance which included 5% for inherent delays and relief time, 6% for personal allowances and from 5 to 15% for fatigue. Finally, an incentive factor was added to the base minute. This produced a new value for the base minute which was then translated into the produc-

tion standard, or the standard production for one hour of work, and the employee's actual production was measured against this standard. However, according to the affidavit of Thomas O'Malley, Cole's director of industrial relations, the arbitrator, while employing the same percentage factors set forth in the collective bargaining agreement, utilized a different method of calculation. The arbitrator first noted that because the presses involved were automatic machines, the operator had no control over the number of parts which were produced at a particular machine setting. Therefore, the arbitrator concluded that it would be inappropriate to apply a levelling factor which might take into account individual differences in operating procedures. Arbitrator Dash determined that automatic press operators should be allowed the minimum percentage time for the factors of inherent delay, personal allowance, and fatigue of 16%. The arbitrator determined that the 16% should be added to the base amount in order to produce a production standard. For example, if a machine produced 51 parts per minute, so that the "base minute" was .0196, the arbitrator took 116% of the base minute to produce a new figure of .0227 representing the "base minute" per piece plus 16% for delay, relief, and fatigue. The arbitrator used this new production standard as the basis for his incentive award. Cole had suggested a 30.5% incentive bonus and the Union submitted that 37.5% was a fairer figure. The arbitrator adopted the Union's position and calculated the incentive standard to be 37.5% of his revised base minute figure, adding it to that figure in order to arrive at the incentive standard. He included in his decision tables representing his calculations for each of the two automatic presses.

Cole submits that the above method of calculation was improper. Apparently, for at least 20 years Cole's practice has been to take each factor, including but not limited to those factors which relate to inherent delay, personal allowance, and fatigue expressed as a percentage, times the base minute in order to obtain absolute numbers which represent that percentage of the base

minute. Those numbers are then added directly to the base minute to calculate the incentive standard. The difference between Cole's method of calculation and that used by the arbitrator is that the arbitrator's method added the percentage of the base minute attributable to the factors of delay, personal allowance, and fatigue to the base minute before that number was multiplied by the percentage attributable to the incentive bonus. Thus, the arbitrator's method produces a higher incentive standard than does the one used by Cole. Cole contends that the arbitrator exceeded the scope of the Collective Bargaining Agreement by adopting this different method in view of the fact that Cole's method had been used as the exclusive means of determining incentive standards for at least 20 years. The Union, on the other hand, seeks enforcement of the award, stating that the question submitted to the arbitrator was what was a "fair" amount of bonus on the two automatic presses and that his decision is simply an answer to that question.

 The Court's review of a decision of a labor arbitrator is circumscribed by a policy of deferring to his judgment on the merits so long as it "draws its essence" from the Collective Bargaining Agreement. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597–99, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), the Court held that a labor arbitrator's award must be affirmed if his interpretation of the Collective Bargaining Agreement can reasonably be derived from the Agreement viewed in the light of its language, its context, and any other manifestations of the parties' intentions. The Court can refuse to enforce the arbitrator's decision only if it demonstrates manifest disregard of the Collective Bargaining Agreement, if there was fraud or misconduct on the part of the arbitrator, if the award violates a specific command of some law, if it is too vague to enforce, or if it is inconsistent with public policy. *See Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128–29 and n.27 (3d Cir. 1969). *See also Hart v. Overseas Nat'l Airways, Inc.*, 541 F.2d 386, 393 (3d Cir. 1976); *N.F.*

*& M. Corp. v. United Steelworkers*, 524 F.2d 756, 759 (3d Cir. 1975); *Electrical, Radio & Machine Workers v. R.C.A. Corp.*, 516 F.2d 1336, 1339–1340 (3d Cir. 1975). The United Steelworkers contend that Arbitrator Dash's award clearly derives its essence from the collective bargaining agreement while Cole contends both that his award went beyond the terms of the Agreement and that the award exceeded the scope of his authority based upon the questions submitted for arbitration.

In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), the arbitrator whose award was being questioned had been faced with two possible interpretations of the Collective Bargaining Agreement. The interpretation adopted by the arbitrator was found by the Court of Appeals to conform both to the general canons of contract construction and to the "common law of the shop." The Court concluded that the award did not "[fly] in the face of any rational interpretation of the collective bargaining agreement" and affirmed the award. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1133. The Court did not review the reasoning of the arbitrator but merely determined that it was rational for him to reach the conclusion upon which he based his award.

In *United Mineworkers v. Pennweir Constr. Co.*, 379 F.Supp. 827 (W.D.Pa.1974), an employee had been discharged summarily within 30 days of the date of his hiring under the employer's customary practice of placing all new employees on probation for a period of 30 days. The dismissed employee filed a grievance which was submitted to arbitration. The arbitrator reinstated the employee based upon a provision in the Collective Bargaining Agreement that there should be no summary discharge of any employees. Although the Court recognized the argument of the company that it had been its practice for many years to treat all employees as probationary for the first 30 days of work, the Court noted that a conflict in rules existed and that the arbitrator's decision clearly drew its authority from the Collective Bargaining Agreement. Even if the arbitrator had miscon-

strued the agreement, so long as his decision was based upon it, the Court held that it had no power to substitute its judgment for that of the arbitrator. *United Mineworkers v. Pennweir Constr. Co.*, 379 F.Supp. at 829, *citing Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 203 n.4, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

■ It is the Court's view that arbitrator Dash's decision in this case "drew its essence" from the Collective Bargaining Agreement between Cole and the United Steelworkers of America. Article XIV of that agreement states no more than that the Standard Hour Incentive Plan should be applied to determine the amount of bonus to be paid to employees. There is no express provision of the agreement concerning the method of calculating the standards to be used, including the production standard for the base minute. The percentages used by arbitrator Dash in computing the amount of bonus are drawn directly from Article XIV. Therefore, where no method is specified in the collective bargaining agreement the fact that the arbitrator employed a different method of calculation from that which Cole had commonly used does not mandate the conclusion that his award did not draw its essence from the agreement. Although Cole states correctly that the law of the shop can be relevant to an arbitrator's decision, see *Textile Workers Union v. Textile Paper Products, Inc.*, 405 F.2d 397 (5th Cir. 1968), the decisions support only the proposition that an arbitrator is entitled to look at the past practices of the parties in order to read meaning into the Collective Bargaining Agreement and not that he must do so where an ambiguity exists. *See also Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1131 (3d Cir. 1969).

Cole also contends, however, that the award violated the express language of Article XIV which makes the incentive standard the "sum" of all the factors listed, stating that "sum" implies simple addition and not the "compounding" engaged in by Arbitrator Dash. "Sum," however, means "to add together," see Oxford English Dictionary (microprint ed. 1971), p. 3149 and Webster's 3d New Int'l Dictionary (1966), p. 2289, and the arbitrator did add his figures

together. The Court cannot say that his interpretation of the word "sum" in Article XIV is irrational.

■ Even if the arbitrator's award draws its essence from the Collective Bargaining Agreement, it may be set aside if the award exceeds the scope of the issues submitted to arbitration. *See, e. g., Nuest v. Westinghouse Air Brake Co.*, 313 F.Supp. 1228, 1234 (S.D.Ill.1970); *see also Communications Equipment Workers, Inc. v. Western Elec. Co.*, 320 F.Supp. 1277, 1280 (D.Md. 1970). However, in determining what issues were submitted to the arbitrator, because of the policy favoring the finality of an arbitrator's decision, the Court may not construe the documents setting forth a grievance in the same way it would construe a pleading filed in a court of law. *See Keystone Printed Specialties v. Scranton Printing Pressmen & Assistants*, 386 F.Supp. 416, 422 (M.D.Pa.1974) (Sheridan, C. J.). In this case, the Union contends that the issue before the arbitrator was what was the fair amount of bonus to be awarded to operators of the two automatic presses. Cole alleges that the arbitrator's decision was limited to which of the two figures submitted was correct, the 30.5% net bonus submitted by Cole or the 37.5% net bonus submitted by the Union. An affidavit of Ralph C. Dasher, a union rate steward, accompanying the Union's brief for summary judgment indicates that the grievance report filed concerning the amount of bonus states only that the operators charged that the machines "do not yield a fair amount of bonus." It is apparent from Exhibit 3 attached to the Dasher affidavit, a statement of the company's position on his grievance, that the parties believed that the arbitrator should decide what was a "fair" amount of bonus because they address the issue of whether the profit being earned on the machines was "fair" as defined in Webster's Dictionary. The evidence submitted to the arbitrator was apparently without restriction and the arbitrator himself believed that it was his duty to decide what was a "fair" bonus rather than whether one side or the other had submitted the correct figure. On page 9 of his decision, Exhibit B

attached to Cole's complaint, the arbitrator states that "the Union's suggestion that an incentive bonus of 37.5% be added to the standard *is not far off* from an appropriate result . . .." (Emphasis supplied). Therefore, the Court determines that the issue submitted to the arbitrator was what was a fair bonus to be given to the operators of the two automatic presses in question and not simply which one of a 30.5% or a 37.5% net bonus was the correct result.

■ The United Steelworkers have also contended that the Court would be without power to vacate the judgment of the arbitrator because Cole did not file an appropriate action against an appropriate party within three months of the date of the arbitrator's decision. Cole's action was filed on 6/22/77 against the United Steelworkers of America, Local No. 4407, whereas United Steelworkers of America, AFL–CIO is the collective bargaining agent with whom Cole entered into the agreement. The arbitrator's award was filed on March 28, 1977 and as of the date of this Opinion Cole has not filed such an action against the United Steelworkers. It is clear that a suit to vacate and set aside an arbitrator's award must be brought within 3 months of the date of the award. *See Siskey v. General Teamsters, Chauffeurs, Warehousemen & Helpers*, 419 F.Supp. 48, 50 (W.D.Pa. 1976); *Int'l Brotherhood of Teamsters v. Motor Freight Express, Inc.*, 356 F.Supp. 724, 726 (W.D.Pa.1973). However, because the Court will grant United Steelworkers' motion for summary judgment and order that the arbitrator's award be enforced, the Court need not reach the question of whether Cole's action was timely filed or filed against the proper party.

An appropriate order will be entered.