**TYPOGRAPHICAL WORKERS UNION**

v.

**BULLETIN COMPANY.**

**Civ. A. No. 79–1658.**

United States District Court,
E. D. Pennsylvania.

Jan. 31, 1980.

Bruce E. Endy, Philadelphia, Pa., for plaintiff.

Mark S. Dichter, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court are: (1) the motion for summary judgment of plaintiff Typographical Workers Union ("the Union"); and, (2) the motion for summary judgment of defendant Bulletin Company

("the Bulletin"). The Court finds that there is no dispute as to any material issue of fact and that the Bulletin is entitled to a judgment in its favor as a matter of law. Accordingly, the Bulletin's motion will be granted and the Union's motion will be denied.

The Union brought this action to vacate an arbitration award which was rendered in favor of the Bulletin. The Union and the Bulletin are parties to a collective bargaining agreement and this Court has jurisdiction over the subject matter of the controversy. 29 U.S.C. § 185.

The facts in this case are not in dispute. The collective bargaining agreement in question was in force between the parties from July 1, 1977, to August 31, 1979. Sometime during 1975, the Bulletin contemplated implementing a technological change in the manner in which type is set. It is sufficient for the purposes of the instant motions to note that the Bulletin decided to abandon the labor intensive, "hot-type" linotype method of typesetting in favor of a computerized system. It is undisputed that the computerized system requires much less labor and, accordingly, caused concern with job security among the composing room employees.

In February, 1975, a supplemental agreement was entered into by which the Bulletin agreed to provide lifetime job security for composing room employees. However, the excess labor created by the shift to a computerized system could not be reduced by normal attrition and expedited retirements. Accordingly, in 1978, the Bulletin took on additional composing room business from other newspapers, in order to provide work for the excess composing room employees. It was this additional business which caused the Bulletin to unilaterally strip eight journeymen on the late shift of the benefit of having contiguous nights off on the weekend.

It is agreed that, for a period of thirty years, senior composing room employees enjoyed the status of having contiguous nights off on the weekends. In addition, once having achieved that status, no journeyman was ever stripped of it. For this reason, the Union invoked the grievance procedures under the collective bargaining agreement, culminating in an arbitration before Howard G. Gamser ("the Arbitrator") on January 24, 1979. On March 16, 1979, the Arbitrator released his award, finding that the Bulletin did not violate the terms of the collective bargaining agreement.

The Union filed suit in this Court on May 8, 1979, seeking an order vacating the award on the grounds, *inter alia*, that the Arbitrator's award did not take its essence from the agreements between the parties and is otherwise an irrational result.[1] The core of the Union's argument is that the Arbitrator erred because he did not find that the Bulletin was bound by the past practice of some thirty years' standing. The Bulletin responded by arguing that the contract did not provide senior journeymen with the right to contiguous nights off; that the Union had attempted, unsuccessfully, to bargain for guarantees of contiguous weekend nights off; and, that the past practice did not, therefore, become a binding aspect of the bargaining relationship.

This Court's review of the Arbitrator's decision is limited by a policy of deferring to his award as long as it "draws its essence" from the agreement between the parties. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). That is, the Court must determine if the Arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* One aspect of the context of the

---

1. In addition, the Union argues that the award of the Arbitrator in this case is inconsistent with the award of Arbitrator Peter Seitz, rendered in a similar grievance between the parties. However, the Seitz award plainly involved different contractual provisions and, in any event, mere inconsistency will not be sufficient to support an attack on an otherwise valid award. *Westinghouse Elevators v. S. I. U. de Puerto Rico*, 583 F.2d 1184, 1186–1187 (1st Cir. 1978).

agreement is what is known as the "law of the shop" or the "industrial common law." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 582, 80 S.Ct. 1347, 1352, 1353, 4 L.Ed.2d 1409 (1960). Similarly, the arbitrator must consider the past practices between the parties. *H. K. Porter Co. v. United Saw, File & Steel Prod. Workers*, 333 F.2d 596 (3d Cir. 1964). *See also Cole v. United Steelworkers of America, Local 4407*, 441 F.Supp. 1346, 1350 (M.D.Pa.1977). In sum, the Court must divine the "real intention of the parties." *Ludwig Honold v. Fletcher, supra*, 405 F.2d at 1131. It is this Court's view that the Arbitrator's award "drew its essence" from the agreements between the parties.

In his findings, the Arbitrator began by stating that for the past thirty years, once composing room employees secured contiguous days off on the weekend, they were not required to accept a change in schedule which would deprive them of that right. (Award at 3.) However, the change in technology, followed by the acquiescence to the Union's demand for lifetime job security, made it necessary for the Bulletin to seek new composing room business. (*Id.* at 4.) It was the outside business, along with changes in the Bulletin's own format, which led to the need for more weekend work and the challenged changes in schedules. (*Id.*)

The Arbitrator found that the only relevant language in the contract provided that such preferred work schedules when available would go to the senior bidder. (*Id.*) However, he noted that, during negotiations in 1974, continuing through current negotiations, the Union had attempted unsuccessfully to bargain for an express term in the contract guaranteeing the retention of weekend nights off. (*Id.*) In addition, the parties discussed in extensive negotiations the need for bringing in outside work and the impact on existing work schedules. (*Id.* at 5.) The Arbitrator concluded that:

> [t]he contract provisions cited by both sides emphasizes [*sic*] that the Union, as well as the Employer, understood the need for night work. Those same provi-

sions also expressly recognizes [*sic*] that scheduling of the workforce will give "paramount consideration (to) meeting the work requirements of the business of the Company."

> The former practice, of guaranteeing to certain senior employees a work schedule which could not be altered without those employees agreeing had to give way to the exigencies created by the modified workforce requirements which accompanied the introduction of the new technology into the composing room and the new obligation which the Employer concurrently undertook to provide guaranteed lifetime employment to that workforce. The foundation of the employment relationship was drastically revised and previous practices no longer could command the same requirement of employer adherence.

(*Id.*)

The unchallenged factual findings show that, while the practice in question was well established, the Union was unable to bargain successfully for an express contractual provision. Thus, it cannot be said that the parties intended that the journeymen would be guaranteed that they would retain their contiguous nights off. Similarly, the bargaining history and the change to a less labor intensive technology manifest an understanding, by both sides, that new business was needed and that changes in work schedules could result. Accordingly, the Court finds that the Arbitrator's decision "drew its essence" from the contractual relationship of the parties.